UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| VICTOR ZELAYA-FUNEZ | NO. 17-00090-BAJ-RLB |

## RULING AND ORDER

Defendant was convicted of one count of sexual exploitation of a minor and one count of possession of child pornography, and sentenced to a term of 185 months imprisonment. The U.S. Court of Appeals for the Fifth Circuit affirmed Defendant's conviction and sentence, and Defendant did not seek review by the Supreme Court.

Now Defendant moves to vacate his conviction pursuant to 28 U.S.C. § 2255. (Doc. 132). The Government opposes Defendant's Petition. (Doc. 138). For reasons below, Defendant's Petition will be denied.

## I. BACKGROUND

Defendant is a Spanish-language speaker, and native of Honduras. On July 12, 2017, the Grand Jury returned a two-count Indictment charging Defendant with sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and (e) (Count 1), and (2) possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2). (Doc. 1). Defendant's offenses arose from having downloaded sexually explicit images of his girlfriend's daughter (a minor) from the girl's Facebook account, and then using the same in a blackmail attempt to solicit more illicit images.

On January 8, 2018, Defendant executed an English-language plea agreement

with the United States, whereby he agreed to plead guilty to Count 1 in return for dismissal of Count 2 (and various additional stipulations). (Doc. 81-1). Relevant here, the plea agreement states that it is "binding" "[o]nce signed by the defendant, his counsel, and an attorney for the United States." (*Id.* at 13). The plea agreement reflects that it was signed by the Acting United States Attorney on December 14, 2017, and by Defendant and his counsel on January 8, 2018. (*Id.* at 16-17).

Also relevant here, the plea agreement states that Defendant's "fail[ure] to plead guilty to Count One of the Indictment" would "constitute[] a material breach of this agreement," (*id.* at 9), in which case the United States would be "relieved of its obligations under the agreement," and even permitted to use "statements and information provided by the defendant pursuant to this agreement … against the defendant" at trial, (*id.* at 10). Explaining further, the plea agreement stated:

> Such statements and information include, but are not limited to, the plea agreement itself (including the factual basis contained in Section D) … . The defendant expressly and voluntarily waives the protection afforded by Fed. R. Evid. 410 as to any statements made by him personally (but not as to statements made by his counsel).

(*Id.*).

Defendant appeared for his re-arraignment on January 9, 2018 (the day after he executed the plea agreement). Rather than proceed with his plea, however, Defendant informed the Court (through a certified Spanish-language interpreter) that he had changed his mind and no longer intended to plead guilty. (Doc. 36 at 3:8-22). The Court immediately questioned Defendant to confirm that he had discussed this about-face with his attorney, and that he understood that by going forward to trial "the jury would be required to not only deliberate on Count One … contained in

2

the Indictment, but also Count Two," and that, consequently, in the event of a conviction, he could be subject to "substantially higher" penalties. (*Id.* at 3:23-4:18). At each juncture, Defendant affirmed his intent to proceed to trial, and his understanding of the potential consequences. (*See id.*). Thereafter, based on Defendant's failure to plead guilty, the Government informed the Court of its intent to seek admission of the plea agreement's factual basis against Defendant at trial. (*See id.* 4:20-6:13). Before concluding the hearing, and without any objection from Defendant, the Court permitted the Government to authenticate the plea agreement and the signatures appearing at the end. (*Id.* at 6:19-8:14). Defendant admitted to having signed the plea agreement on January 8. (*Id.* 7:12-20).

Two weeks later, on January 25, 2018, the Government filed its motion "to introduce the plea agreement, including the factual stipulation agreed to by the defendant, at trial," as part of its case-in-chief. (Doc. 38-1 at 2). Defendant, through counsel, opposed the Government's motion, arguing that the terms and consequences of breach stipulated in the plea agreement were not binding because the Court "never made a determination" that Defendant entered the plea agreement "knowingly and voluntarily," and, further, that the factual basis set forth in the agreement could not be used against Defendant at trial because Defendant never "testified under oath concerning [its veracity]." (Doc. 47 at 1; *see also id.* at 4-5). Further, Defendant's counsel squarely raised the issue of Defendant's limited English-language proficiency as a key factor to determining whether Defendant's execution of the plea agreement was knowing and voluntary:

3

> As this Honorable Court knows, defendant is not fluent in the English language. He cannot adequately and fully read and understand English. Defendant's native language is Spanish. Additionally, defendant is not a U.S. Citizen. Defendant is an alien and the government has failed to show that defendant has even a general understanding of the U.S. criminal justice system.
>
> The relevant plea agreement is written in English only. By not providing the defendant with a document that he can read, the government placed the defendant in a position to have to rely on others for interpretation of the English document before signing same. Defendant could not personally read and fully understand the plea agreement he was signing as he was unable to read in English. The government simply failed to place the defendant in a position to make an informed waiver of his 410(a) and 11(f) rights.
>
> The plea agreement used by the government must give the defendant the opportunity to make a meaningful waiver of his 410(a) and 11(f) rights in order for the plea agreement to be admissible in later proceedings should the plea agreement not result in a guilty plea. The relevant plea agreement was in English. The defendant was not sufficiently proficient in the English language to be able to personally read and understand the English plea agreement. Therefore, this Honorable Court, in keeping with the policy that waivers of 410(a) and 11(f) rights are to be strictly construed, must find that the relevant plea agreement is inadmissible under the circumstances because the defendant is unable to read, write, or speak the English language, and thus, unable to personally read and understand the nature of the plea agreement he signed. Section H of the plea agreement, the Representations and Signatures section by both the defendant and defense counsel, mentions nothing concerning the waiver by defendant of the protections of Rules 410(a) and 11(f). The Rule 410(a) and 11(f) waiver contained in the plea agreement simply is not effective under the circumstances of this case. Therefore, the plea agreement and the factual basis recited in the plea agreement are inadmissible at defendant's trial.

(*Id.* at 3-4).

On February 27, 2018, the Court held a hearing to take evidence on the Government's motion. (Doc. 49). A second evidentiary hearing followed on May 1, 2018, at which Defendant and Defendant's counsel each provided testimony

regarding the circumstances of Defendant's execution of the January 8 plea agreement. (Doc. 73, Doc. 74). Thereafter, on May 11, 2018, the Court issued its Order granting the Government's motion, determining that the plea agreement and its stipulated factual basis was admissible at trial. (Doc. 75). The Court concluded based on the credible testimony provided at the May 1 hearing, that Defendant's attorney—also a Spanish-language speaker—read, translated, and explained the plea agreement to Defendant prior to Defendant signing it and, further, that when he executed the agreement, Defendant understood the Rule 410 waiver and that the stipulated factual basis could be used against him at trial if he did not ultimately plead guilty. (Doc. 75 at 4-6). Critically, to the extent that Defendant's testimony diverged from his attorney's testimony on these points, the Court credited counsel testimony, determining that counsel's testimony "was credible," whereas Defendant's testimony was often "unclear," "equivocal," and "evasive." (*Id.* at 6).

Defendant proceeded to trial on June 19, 2018. At trial, the Government introduced a redacted copy of the plea agreement and read the following portion of its factual basis to the jury:

> The United States and the Defendant stipulate to the following facts:
>
> Beginning in or about June 2016, through on nor about July 21, 2016, the Defendant, from a location within the Middle District of Louisiana, used his Samsung Galaxy S7 smartphone to send messages to child Victim A (hereinafter, the "Victim"), a minor who was under the age of 16 throughout the aforementioned time period, in an attempt to persuade, induce, entice, and coerce child Victim A to produce, and send him via the internet, "selfies" (self-portrait photographs) and videos depicting child Victim A engaging in sexually explicit conduct.
>
> …

Among other things, the Defendant, in his messages, described the Victim's body as "delicious" and the Victim's genitalia as "hot." He also distributed sexually explicit selfies of the Victim, including a lewd and lascivious close-up image of the Victim's genitalia, to the Victim. The Defendant … had previously managed to obtain the sexually explicit selfies of the Victim from the Victim's Facebook account. The Defendant threatened to reveal the sexually explicit selfies of the Victim to the Victim's mother and father if the Victim did not take and send to the Defendant new sexually explicit selfies. In other messages, the Defendant said he cares for the Victim and promised to take the Victim to the movies.

In order to make his intentions clear, the Defendant, as referenced, distributed to the Victim a lewd and lascivious close-up image of the Victim's genitalia. After sending this image, the Defendant told the Victim to send him another picture of "that hot thing." The Defendant said the Victim would regret not sending him new sexually explicit selfies and videos.

All of the foregoing messages were sent over Facebook Messenger between in or about June 2006 [sic] through on or about July 21, 2016. Facebook Messenger requires the use of the internet. During the foregoing events, the Defendant was dating the Victim's mother and had been living with the Victim and the Victim's mother in Zachary, Louisiana, for several years.

The Defendant was arrested on July 21, 2006 [sic]. Following his arrest, the Defendant made a recorded telephone call from jail to the Victim's mother. During the recorded call, the Defendant admitted that he had attempted to obtain additional images of the Victim.

…

The Defendant admits that, to the best of his knowledge and belief, the stipulated statement of facts is true and correct in all respects. The United States and the Defendant agree that, had this matter gone to trial, the United States could have proved such facts. The United States and the Defendant further agree that such facts are sufficient to support conviction of the … offense to which the Defendant has agreed to plead guilty.

…

I, Victor Zelaya-Funez … have read this plea agreement and have discussed it with my attorney. I fully understand the agreement and enter into it knowingly, voluntarily, and without reservation. I have not

6

> been threatened, intimidated, pressured, or coerced in any manner. I am not under the influence of any substance or circumstance that could impede my ability to understand the agreement and its consequences.
>
> …
>
> I have accepted this plea agreement and agreed to plead guilty because I am in fact guilty of offense charged … in count one of the Indictment[.]

(Doc. 121 at 178:25-183:21).

On June 20, 2018, the jury returned its verdict, finding Defendant guilty of both Counts set forth in the Indictment. (Doc. 94).

On December 13, 2018, the Court entered its Judgment sentencing Defendant to a below-Guidelines term of 185 months imprisonment (185 months imprisonment on Count 1, and a concurrent term of 120 months imprisonment on Count 2). (Doc. 110).

Defendant appealed his conviction to the Fifth Circuit, raising the following issue:

> A waiver of the exclusionary provisions of Rule 410, Fed. R. Evid. is valid absent some "affirmative indication" that the waiver was unknowingly [sic]. The waiver here was contained in a plea agreement written in English, which Zelaya-Funez does not understand, and was explained to him in Spanish by his bilingual attorney without the presence of certified translator, the Government, or the [J]udge. Is Zelaya-Funez's claim that he did not understand the waiver an affirmative indication sufficient to void the waiver?

(Doc. 138-1 at 6).

On April 21, 2020, the Fifth Circuit issued its Judgment and Mandate affirming Defendant's conviction, flatly rejecting Defendant's argument that his waiver was involuntary because the terms of the plea agreement were not sufficiently translated or explained to him:

7

On appeal, Zelaya admits that [his attorney, Ivan Alberto Orihuela,] "translated the Rule 410 waiver provision," but he contends that he did not understand Orihuela's translation. As proof of this contention, he relies on his sworn testimony at the hearing and on the facts that Orihuela paraphrased the provision at issue rather than translating it word for word, that Orihuela's first language was not Spanish, that Orihuela learned Spanish from his Puerto Rican family, not Honduran speakers, and that Orihuela was not a certified translator.

It is well beyond plausible, though, that Orihuela translated the Rule 410 waiver in a manner comprehensible to a Honduran-Spanish-speaker. Orihuela has translated thousands of legal documents into Spanish, and his large Spanish-speaking clientele hails from different countries. He was alert to different dialects at the hearing—as he exhibited, for example, by his testimony that the word *rechazar* might bear different translations in different countries. There is no reason to think that this alertness developed only then. Nothing in the record establishes that Orihuela's explanation of the Rule 410 waiver—"that if he were to decide not to plead guilty . . . there was a potential that this plea agreement could be used against him in court"—would be understood differently by Honduran clients than by any other Spanish-speaking clients. To be sure, Orihuela's use of layman's terms in his explanation of the provision is weak evidence against the comprehensibility of his translation.

In face of an objectively understandable translation, then, it is plausible, at least, that Zelaya understood the Rule 410 waiver provision. A person who has heard a comprehensible explanation of a contract provision may be presumed to have understood that explanation. Further, Zelaya gave no indication of misunderstanding, either during the discussion with Orihuela or at re-arraignment, when the judge asked him whether he had any questions about the government's intention to use his plea agreement against him.

That leaves only Zelaya's testimony to establish that he did not understand Orihuela's translation. In that self-serving testimony, Zelaya repeatedly refused to answer whether Orihuela's Spanish-language discussion of particular provisions matched the Spanish-language interpretation of those provisions provided by the certified court interpreter. He refused on the ground that he cannot read English—a non sequitur that the court could plausibly interpret, while also considering Zelaya's demeanor, as evasive. The plausibility of this credibility finding is not defeated by Zelaya's argument on appeal that the statements of his testimony are logically consistent with the

8

> statements of Orihuela's testimony, for logical contradiction is not the only sign or effect of evasion, ambiguity, or equivocality. The court reasonably deemed Zelaya's testimony incredible, and, as such, that testimony was no obstacle to finding that Zelaya knew about the Rule 410 waiver provision.
>
> In light of the record as a whole, it is indeed plausible that Zelaya knew of the provision to let the government use the contents of his plea agreement as evidence if he should not plead guilty. In finding that Zelaya had such knowledge, therefore, the district court did not clearly err.

*United States v. Zelaya-Funez*, 807 F. App'x 315, 319-20 (5th Cir. 2020).

Defendant did not seek Supreme Court review of the Fifth Circuit's Judgment. Instead, on February 21, 2021, Plaintiff filed the instant § 2255 Petition. (Doc. 132). Liberally construed, Plaintiff's *pro se* Petition raises multiple ineffective assistance of counsel claims, and a separate claim that introduction of his plea agreement to the jury violated his rights to due process and a fair trial. (*See* Doc. 132, Doc. 132-1). The Government opposes Defendant's Petition. (Doc. 138). A hearing is not necessary.

## II.  LAW AND ANALYSIS

### A. Standard

Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Specifically, the statute sets forth four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United*

9

*States*, 368 U.S. 424, 426–27 (1962). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall … grant a prompt hearing." 28 U.S.C. § 2255(b).

A defendant seeking relief under § 2255 must plead sufficient facts to establish a prima facie case of a constitutional violation. *United States v. Woods*, 870 F.2d 285, 287 (5th Cir. 1989). "[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* at 288 n.3.

Finally, and importantly, to warrant relief the defendant must show "actual prejudice" resulting from a constitutional violation. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "Actual prejudice" occurs when the constitutional error "had substantial and injurious effect or influence" on the outcome of the proceeding. *See id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### B. Discussion

#### 1. Defendant was not denied effective counsel

The Sixth Amendment guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them." *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001). This right "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. at 5, 124 (2003).

The Court reviews claims of ineffective assistance of counsel under the two-pronged test first established in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance

10

prejudiced his defense—*i.e.*, "there is a reasonable probability that but for counsel's poor performance the result of the proceeding would have been different." *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012). "Both of these prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

> Importantly, judicial scrutiny of counsel's performance must be highly deferential. When evaluating the first *Strickland* criterion, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Further, we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quotation marks and citations omitted).

Defendant first contends that trial counsel was ineffective for "not properly challenging whether [he] waived the protections of Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410(a) under the circumstances presented in this case." (Doc. 132-1 at 10). Liberally construed, Defendant asserts that when the Government sought its pretrial ruling regarding the admissibility of the January 8 plea agreement and its factual basis a trial, Defendant's counsel should have opposed, arguing three variations of the same objection: (1) the plea agreement was unenforceable and Defendant was entitled to withdraw without consequence at any time before it was accepted by the Court, (Doc. 132 at 4); alternatively, (2) Defendant did not breach his plea agreement because the plea agreement only became binding upon acceptance by the Court, (Doc. 132-1 at 7); and, in any event,

11

(3) the plea agreement is ambiguous regarding whether Defendant "intended to waive his Rule 410(a) and 11(f) rights contemporaneously with his signing of the plea agreement, or, instead, intended to waive them only upon the district court's acceptance and activation of his guilty plea," and this ambiguity must be construed against the Government, (Doc. 132-1 at 12).

The problem here, as set forth above, is that trial counsel *did* oppose the plea agreement's admission at trial, *strenuously*, albeit unsuccessfully. True, the thrust of Counsel's argument was that Defendant's inability to "read, write, or speak the English language" rendered him unable to knowingly and voluntarily execute the January 8 plea agreement. (*See* Doc. 47 at 4). But this was plainly the best argument available to Defendant. By contrast, Defendant's proposed alternative arguments are meritless. Fifth Circuit law is clear: "We construe a plea agreement like a contract, seeking to determine the defendant's 'reasonable understanding' of the agreement and construing ambiguity against the Government." *United States v. Escobedo*, 757 F.3d 229, 233 (5th Cir. 2014). Here, Defendant entered a plea agreement expressly stating that it became effective upon execution by Defendant, Defendant's counsel, and a representative of the United States. (Doc. 81-1 at 13). In this light, it would have been frivolous for trial counsel to argue that the plea agreement—and the Rule 410 waiver—did not become effective and could not be breached prior to its acceptance by the Court. *See Escobedo*, 757 F.3d at 233–34 (looking at the language of plea agreement containing Rule 410 waiver to determine whether parties intended the waiver to be effective when the defendant signed the agreement or instead when the

12

court accepted the plea agreement). "An attorney's failure to raise a meritless argument … cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

Next, Defendant argues that trial counsel was ineffective for not properly challenging whether the plea agreement was accurately translated to Defendant prior to its execution, "accounting [for] possible ambiguity generated by the variances between … Puerto Rican Spanish, and Honduran Spanish." (Doc. 132-1 at 23; Doc. 132 at 5). In other words, trial counsel also should have argued that Defendant did not knowingly and voluntarily execute the plea agreement because, due to differences between Defendant's native tongue and trial counsel's dialect, Defendant did not adequately understand the consequences of the plea agreement and the Rule 410 waiver. (Doc. 132 at 5).

The problem with this claim is that its merits have already been thoroughly vetted and rejected by the Fifth Circuit in Defendant's direct appeal. *Zelaya-Funez*, 807 F. App'x at 319-20. Under the law-of-the-case doctrine, an issue decided on direct appeal "may not be resurrected and urged anew" in a § 2255 proceeding, *United States v. Rodriguez*, 821 F.3d 632, 634 (5th Cir. 2016) (quotation marks omitted). True, in his direct appeal Defendant did not label his claim ineffective assistance of counsel. But the label does not matter: the Fifth Circuit's Judgment affirmed this Court's determination that Defendant understood the plea agreement and the consequences of breach when he signed it (regional Spanish dialect differences notwithstanding),

13

and specifically that Defendant "knew of the provision to let the government use the contents of his plea agreement as evidence if he should not plead guilty." *Zelaya-Funez*, 807 F. App'x at 320. By "necessary implication," any claim that trial counsel was ineffective for failing to argue that potential differences between Puerto Rican Spanish and Honduran Spanish undermined Defendant's understanding of the plea agreement is precluded by the Fifth Circuit's decision on direct appeal. *E.g.*, *United States v. Goudeau*, 512 F. App'x 390, 393 (5th Cir. 2013) (rejecting defendant's ineffective assistance of counsel claim because the alleged attorney error providing the basis of the claim was already considered and rejected in his direct appeal: "In order for the law-of-the-case doctrine to apply, the issue need not have been explicitly decided; the doctrine also applies to those issues decided by 'necessary implication.'" (quotation marks omitted, citing authorities)).

Finally, Defendant asserts that trial counsel was ineffective for failing to object to "the improper introduction of his plea agreement" at trial, and for failing to seek a mistrial after the factual basis was read to the jury. (Doc. 132-1 at 24-26; Doc. 132 at 7). Again, this argument is baseless. Defendant's counsel *did* object, albeit unsuccessfully. Thereafter, the plea agreement was properly admitted based on Defendant's valid Rule 410 waiver. *E.g.*, *United States v. Nelson*, 732 F.3d 504, 517 (5th Cir. 2013) (holding that Defendant waived his protections under Rule 410 and that plea agreement was properly admitted against him at trial where "the [stipulated factual basis] was reduced to writing and signed by Nelson [the defendant], and the plea agreement explicitly provided that the government could

14

admit the factual basis if Nelson failed to plead guilty to the Bill of Information"). To move for a mistrial after the plea agreement was read to the jury would have been frivolous, would not have changed the ultimate result, and cannot provide the basis for an ineffective assistance of counsel claim. *See Kimler*, 167 F.3d at 893.

### 2. Defendant was not denied a fair trial due to the plea agreement having been presented to the jury

Finally, Defendant argues that independent of any deficiencies of counsel, he was denied due process and a fair trial when the plea agreement's factual basis was recited to the jury. (Doc. 132 at 7).

As an initial matter, this claim is defaulted because it could have been raised on direct appeal based on the record of the proceedings in this Court, but was not. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (instructing that a defaulted claim is one that "can be fully and completely addressed on direct review based on the record created at the [trial court proceedings]"); *United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001) ("[A] court may, sua sponte, invoke the procedural default rule as a bar to § 2255."). Defendant's default may be excused if he can show "both cause for his procedural default and actual prejudice resulting from the error," such as by establishing a credible showing of actual innocence or ineffective assistance of appellate counsel. *See United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). Here, however, Defendant has not even attempted to make such a showing.

In any event, the claim is, again, baseless. Rule of Evidence 410 prohibits the use of "a guilty plea that was later withdrawn" or a "statement made during a proceeding on" that plea under Rule of Criminal Procedure 11. Importantly, however,

15

"absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *Nelson*, 732 F.3d at 517 (quoting *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995)). As set forth herein and throughout these proceedings, Defendant knowingly and voluntarily waived his protections under Rule 410, by executing the January 8 plea agreement with the aid of his bilingual attorney and a full understanding and appreciation of the plea agreement's consequences. After Defendant failed to go through with his plea, the plea agreement and its factual basis were properly recited to the jury at Defendant's trial. *See supra*, *Nelson*, 732 F.3d at 517.

### 3. Certificate of appealability

Reasonable jurists would not debate the denial of Defendant's Petition, or the correctness of the Court's substantive rulings that Defendant has failed to make a substantial showing of the denial of a constitutional right. As such, Defendant will be denied a certificate of appealability. *See United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997).

## III. CONCLUSION

In sum, Defendant has failed to show that he is entitled to relief. Accordingly,

**IT IS ORDERED** that Defendant's **Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. 132)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability be and is hereby **DENIED**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant's related action No. 3:21-cv-00088-BAJ be and is hereby **TERMINATED** and **CLOSED** consistent with the denial of relief set forth herein.

Baton Rouge, Louisiana, this 5th day of January, 2024.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**